**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ERNESTO MALDONADO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 4149 |
| | ) | |
| **SINAI MEDICAL GROUP, INC., MT. SINAI HOSPITAL MEDICAL CENTER OF CHICAGO; SINAI HEALTH SYSTEM, INC.; THE UNITED STATES OF AMERICA; ALVARO REYES, M.D., INDIVIDUALLY AND AS EMPLOYEE AND/OR AGENT OF THE UNITED STATES OF AMERICA AND/OR THE ACTUAL AND/OR APPARENT AGENT OF SINAI MEDICAL GROUP, INC., MT. SINAI HOSPITAL MEDICAL CENTER OF CHICAGO AND SINAI HEALTH SYSTEM, INC.; NANCY GLICK, M.D., INDIVIDUALLY AND AS EMPLOYEE AND/OR ACTUAL AND/OR APPARENT AGENT OF SINAI MEDICAL GROUP, INC., MT. SINAI HOSPITAL MEDICAL CENTER OF CHICAGO, AND SINAI HEALTH SYSTEM, INC.; KENNETH U. EKECHUKWU, M.D., INDIVIDUALLY AND AS EMPLOYEE AND/OR ACTUAL AND/OR APPARENT AGENT OF SINAI MEDICAL GROUP, INC., MT. SINAI HOSPITAL MEDICAL CENTER OF CHICAGO, AND SINAI HEALTH SYSTEM, INC.; AND LISA RUSSELL, M.D. INDIVIDUALLY AND AS EMPLOYEE AND/OR ACTUAL AND/OR APPARENT AGENT OF SINAI MEDICAL GROUP, INC., MT. SINAI HOSPITAL MEDICAL CENTER OF CHICAGO, AND SINAI HEALTH SYSTEM, INC.,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 14, 2007, Plaintiff Ernesto Maldonado ("Maldonado") filed a Second Amended Complaint against Defendants Sinai Medical Group ("SMG"); Mt. Sinai Hospital Medical Center of Chicago ("Hospital"); Sinai Health System, Inc. ("SHS"); the United States of America; Alvaro Reyes, M.D.; Nancy Glick, M.D.; and Kenneth U. Ekechukwu, M.D. Maldonado alleges that the

physician defendants negligently failed to diagnose osteomyelitis of his spine (an infection of the bone)[1] while he was hospitalized at Mt. Sinai in late July 2004, and that he developed paraplegic paralysis as a result. Count I alleges that Dr. Reyes, Dr. Glick, Dr. Ekechukwu, and various unnamed interns, residents, nurses, and technicians provided negligent medical care to Maldonado, and that Defendants SMG, SHS, and Mt. Sinai Hospital were vicariously liable for that individual malpractice, as well as institutionally negligent in overseeing Maldonado's care. In Count II, Plaintiff alleges that the United States is vicariously liable for Dr. Reyes's alleged medical malpractice because Dr. Reyes was its employee and agent.

The Hospital and SHS now move to dismiss Maldonado's Second Amended Complaint in its entirety for failure to comply with 735 ILCS 5/2-622. That statute requires a plaintiff who pleads a cause of action for healing art malpractice to attach to his complaint a medical report that certifies that there is a meritorious basis for the claim. In the alternative, Defendants move to strike: "(1) allegations of negligence by nurses and technicians; (2) allegations of institutional negligence against [Defendants]; (3) allegations as to Dr. Glick; (4) allegations as to Dr. Ekechukwu; (5) allegations as to negligence by unidentified residents and interns," because those individual claims are not supported by a medical report as required by section 2-622. For the reasons stated below, the court considers this motion as addressed to Maldonado's subsequently-filed Third Amended Complaint, grants the in part, and denies it in part.

**FACTUAL BACKGROUND**

The following alleged facts are drawn from the Third Amended Complaint and from the medical reports attached to the Second and Third Amended Complaints. The facts are set forth in the light most favorable to Maldonado.

---

[1] *See* Mayo Clinic Staff, *Osteomyelitis* (June 2, 2006), http://www.mayoclinic.com/health/osteomyelitis/DS00759.

Maldonado was admitted to the Hospital complaining of severe abdominal pain and lower chest pain on June 17, 2004, but was later discharged from the hospital. (3d Am. Compl. [73] ¶ 5.) On July 19, 2004, Maldonado was readmitted to the Hospital for abdominal pain, back pain, and chest pain. (*Id.* ¶ 6.) Maldonado asserts that during the period from July 24, 2004 through July 27, 2004 he was treated by Dr. Russell, Dr. Reyes, Dr. Glick, Dr. Ekechukwu,[2] and various unnamed interns, residents, nurses, and technicians. (*Id.* ¶ 8.) Maldonado alleges that each of these health care providers and Defendants SMG, SHS, and the hospital were negligent "in one or more of the following respects":

- a. [They] [f]ailed to address Ernesto Maldonado's repeated complaints of lower chest and abdominal pain;
- b. Failed to consider differential diagnoses for Ernesto Maldonado's lower chest and abdominal pain;
- c. Failed to properly treat the staphylococcal bacteremia discovered on July 20, 2004;
- d. Failed to address Ernesto Maldonado's complaints of back pain;
- e. Failed to recognize that the findings in the CT scan of July 24, 2004 required immediate follow up;
- f. After receiving the results of the July 24, 2004 CT scan, failed to obtain an MRI or Bone Scan;
- g. Failed to obtain an orthopedic consult;
- h. Failed to diagnose osteomyelitis of his thoracic vertebrae; [and/or]
- I. Failed to treat the osteomyelitis of his thoracic vertebrae.

(*Id.* ¶ 8.) As a result of these allegedly negligent acts, Maldonado asserts that he suffered a spinal epidural abscess, osteomyelitis and parasthesia. (*Id.* ¶ 9.) Maldonado claims that multiple back surgeries were required to treat these conditions. (*Id.*) Even after having received treatment, Maldonado alleges, he has become paraplegic and will be permanently disabled. (*Id.* ¶ 10.) Because of his condition, Maldonado asserts that he will continue to experience pain and suffering for the rest of his life and will no longer be able to work. (*Id.*) Additionally, Maldonado has become liable for substantial sums of money for his medical care. (*Id.* ¶ 11.)

---

[2] Neither the Third Amended Complaint, nor the two medical reports, identify either the medical specialties of these four individual Defendants, or their specific roles in treating Maldonado.

3

Maldonado attached his attorney's affidavit and a report prepared by James Cohn, M.D. to the Second Amended Complaint. The physician's report set out Dr. Cohn's qualifications:

> I am a licensed physician in the state of Illinois. I am a board certified physician in internal medicine and on the faculty at the Northwestern University Feinberg School of Medicine. I am currently practicing internal medicine. I am knowledgeable in the issues of medical care that were practiced in this matter. I am familiar with the standard of care for doctors in this area. I am familiar with what the standard of care requires for physicians treating patients with osteomyelitis, infection, and the findings of osteomylitis [sic] on CT scan.

(Cohn Rep. [37-2], Ex. 2 to 2d Am. Compl.) Dr. Cohn then states that he reviewed the relevant medical records and concluded that there was a reasonable and meritorious basis for filing the complaint against Dr. Reyes, Dr. Glick, Dr. Ekechukwu, and the Hospital. (*Id.*) Dr. Cohn explained the basis for this conclusion as follows:

> While being treated for staphlococcal [sic] bacteremia, [Maldonado] continued to complain of abdominal pain. In addition, he complained of pain in his back upon presentation to the hospital. A CAT scan of his chest performed on July 24, 2004, revealed destruction of the bony architecture of his thoracic vertebrae. This was not investigated or pursued by the physicians, Alvaro Reyes, M.D., Nancy Glick, M.D., and/or Kenenth [sic] Ekechukwu, M.D. or the residents and/or interns employed by the hospital who were caring for Ernesto Maldonado. The abnormal CAT scan showing destruction of the bony architecture should have been investigated and pursued in a timely fashion by these physicians and the residents caring for Mr. Maldonado. This finding on CT scan should have been correlated clinically with the presence of staph in his blood and the patient's complaint of back pain. Had this been done by Drs. Reyes, Glick and/or Ekechukwu, and/or any of the residents and interns caring for Ernesto Maldonado, the diagnosis of osteomyelitis of his thoracic vertebrae should have been made by these physicians and/or residents and his ultimate paralysis could have been avoided.

(*Id.*)

After Defendants challenged Dr. Cohn's report as insufficient under 735 ILCS 5/2-622, Maldonado filed a Third Amended Complaint, and attached a second medical report, this one by John Flaherty, M.D. In this report, Dr. Flaherty, a specialist in internal medicine and infectious disease, addressed only the conduct of Dr. Lisa Russell and Dr. Glick. (Flaherty Rep. [73-2], Ex. 3 to 3d Am. Compl.) Dr. Flaherty concluded that there was a reasonable and meritorious basis for filing an action against both Dr. Russell and Dr. Glick. He supplied the following reasoning for this

4

determination:

> Mr. Maldonado was hospitalized at [the Hospital] in July of 2004. A CT scan of his chest . . . revealed destruction of the bony architecture of his thoracic vertebrae. This finding was not investigated or pursued by his physicians, Lisa Russell, M.D. and Nancy Glick, M.D. The abnormal CT scan showing destruction of the bony architecture should have been investigated and pursued in a timely fashion by these physicians. After the CT scan showed the destruction of the bony architecture, an MRI scan should have been performed to confirm the diagnosis. This finding on CT scan should have been correlated clinically with the presence of *Staphylococcus aureus* in his blood and [Maldonado's] complaint of back pain. The antibiotic treatment with nafcillin should not have been stopped and should have been continued for at least 6-8 weeks. Additionally, Mr. Maldonado should have been examined by a neurosurgeon while in the hospital. Had this been done by Drs. Russell and/or Glick, the diagnosis of osteomyelitis of his thoracic vertebrae should have been made by these physicians, the antibiotic treatment would have continued and his ultimate paralysis could have been avoided.

(*Id.*)

## DISCUSSION

The Hospital and SHS argue that the Second Amended Complaint must be dismissed in its entirety for failure to comply with 735 ILCS 5/2-622. They argue in the alternative that the court should strike numerous allegations from the complaint because they are unsupported by the attached medical reports. The court will consider each argument in turn.

**I.   Motion to Dismiss For Failure to Comply with 735 ILCS 5/2-622**

The Hospital and SHS move to dismiss Maldonado's Second Amended Complaint[3] in its entirety on the grounds that Dr. Cohn's report is insufficient under 735 ILCS 5/2-622. (Mot. to

---

[3] After the Hospital and SHS filed their motions to dismiss on March 13, 2007 (Mot. to Dismiss at 1), Maldonado filed a Third Amended Complaint, which added an additional individual physician-defendant, Dr. Lisa Russell, and which included a new medical report from Dr. John Flaherty. (3d Am. Compl. [73], at 1, Oct. 2, 2007; Flaherty Rep. [73-2], App. 2 to 3d Am. Compl.) This new pleading did not include Dr. James A. Cohn's medical report, which was attached only to the Second Amended Complaint. (Cohn Rep. [37-2], App. 3 to 2d Am. Compl.) Given that the two complaints are essentially identical, at least insofar as they concern SHS and the Hospital, the court will treat the two motions to dismiss as if they were addressed to the Third Amended Complaint, with the Cohn report incorporated by reference. This ruling is without prejudice to any arguments SHS or the Hospital might have that relate only to the new complaint.

5

Dismiss [46], at 2.)[4] Under Illinois law, plaintiffs alleging that an individual defendant committed medical malpractice must consult with a "health professional licensed in the same profession, with the same class of license, as the defendant." 735 ILCS 5/2-622(a)(1). The plaintiff's attorney must attest in a separate affidavit that the health professional "is knowledgeable in the relevant issues involved in the particular action" and "practices or has practiced within the last 5 years or teaches or has taught within the last 5 years in the same area of health care or medicine that is at issue in the particular action." *Id.* A plaintiff then must attach to the complaint a report prepared by the reviewing health professional that "clearly identif[ies] the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for filing of the action exists . . . ." *Id.*

The purpose of section 2-622(b) is to deter the filing of frivolous lawsuits. *See Avakian v. Chulengarian*, 328 Ill. App. 3d 147, 159, 766 N.E.2d 283, 294 (2d Dist. 2002) (citation omitted). In the event that the plaintiff brings suit against multiple defendants, the statute provides that a separate health professional's report should be filed to cover each defendant. 735 ILCS 5/2-622(b). Illinois courts have cautioned, however, that the "technical requirements of the statute should not be mechanically applied to deprive the plaintiff of her substantive rights." *Comfort v. Wheaton Family Practice*, 229 Ill. App. 3d 828, 832, 594 N.E.2d 381, 384 (2d Dist. 1992). Thus, a single report may be applied to multiple defendants as long as it is sufficiently broad to cover each of the defendants and specifies the health professional's reasoning for finding that a reasonable and meritorious case exists against each defendant. *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 373-74,

---

[4] Although SHS and the Hospital assert in their joint reply memorandum that their separate motions to dismiss are non-identical (Reply at 8-9), the court finds no substantive discussion in the SHS motion that is not also in the hospital's motion; the only difference appears to be the substitution of the parties' names at each point in the relevant arguments. Accordingly, the court will cite only to SHS's motion [46] when addressing the arguments made in the twin motions, but will analyze each argument's application to both Defendants, to the extent that there is any difference.

519 N.E.2d 66, 70 (3d Dist. 1988). Furthermore, a plaintiff need not secure an additional report for any defendant whose claimed liability is wholly vicarious. *See Comfort*, 229 Ill. App. 3d at 833-34, 594 N.E.2d at 385.

Neither party contests the application of section 2-622 in federal court.[5] SHS and the Hospital contend that Maldonado has not complied with the statute in that Dr. Cohn's report does not set out the reasoning behind his conclusions. (Mot. to Dismiss ¶¶ 25-26.)

A medical report sufficiently justifies a conclusion that a malpractice action is meritorious if articulates "the deficiencies in the medical care provided by the defendants" which give rise to the plaintiff's cause of action. *Neuman v. Burstein*, 230 Ill. App. 3d 33, 40, 595 N.E.2d 659, 664 (2d Dist. 1992); *see also Giegoldt v. Condell Med. Ctr.*, 328 Ill. App. 3d 907, 913, 767 N.E.2d 497, 502 (2d Dist. 2002) (suggesting that reports should include "what [the defendant] should have done and what it failed to do"). Dr. Cohn explained his reasoning as follows: (1) Maldonado's doctors "should have . . . investigated and pursued" the "destruction of the bony architecture of his thoracic vertebrae" that was revealed by the CAT scan; (2) this damage "should have been correlated clinically with the presence of staph in the blood and the patient's complaint of back pain"; (3) doing this would have resulted in a diagnosis of osteomyelitis of Maldonado's thoracic vertebrae; and (4) if that diagnosis had been made, Maldonado's doctors could have prevented his paralysis. (Cohn Rep.) This explanation sets out both the failure of Maldonado's doctors (they did not investigate the spinal damage) and what they should have done (diagnose osteomyelitis).

---

[5] This precise issue has not been explicitly addressed the Seventh Circuit; however, the Seventh Circuit implicitly assumed that section 2-622 applied when it considered a district court's decision to dismiss a case based on inadequacies in the plaintiff's medical report. *See Sherrod v. Lingle*, 223 F.3d 605, 613-14 (7th Cir. 2000) (finding that the trial court had abused its discretion by denying a plaintiff the opportunity to amend his pleadings in order to comply with section 2-622). The "vast majority" of Illinois federal courts to consider this question have interpreted the requirements of section 2-622 to be matters of substantive law, and have therefore required compliance with the statute in medical malpractice cases arising under Illinois law. *Chapman v. Chandra*, No. 06-CV-0651-MJR, 2007 WL 1655799, at *3 (S.D. Ill. June 5, 2007) (collecting cases).

SHS and the Hospital nevertheless argue that this discussion is "utterly conclusory" because it only states that the possibility of osteomyelitis "should have been investigated and pursued," and does not state in "practical terms" what the doctors should have done. (Mot. to Dismiss ¶ 25.) Dr. Cohn did, however, explain that the individual Defendants should have correlated Maldonado's symptoms to arrive at an accurate diagnosis.[6] Similarly, although SHS and the Hospital fault Dr. Cohn's report for not spelling out more clearly what diagnosing in "a timely fashion" means, it is reasonably clear that "timely," in this context, means "in time to prevent the resulting paralysis." *See Mueller v. N. Suburban Clinic, Ltd.*, 299 Ill. App. 3d 568, 574, 701 N.E.2d 246, 251 (1st Dist. 1998) (in reviewing a medical report attached to a complaint, the court draws all reasonable inferences in favor of the plaintiff). The court concludes that Dr. Cohn's report, though brief, is adequate to satisfy section 2-622.

The one respect in which Dr. Cohn's report is arguably less explanatory than it should be is in its cursory suggestion that if an earlier diagnosis had been made, the paralysis "could have been avoided"; conspicuously absent from the report is *how*, exactly, the earlier diagnosis would have helped prevent Maldonado's injuries—a necessary component of proof for a medical malpractice case. *See* 735 ILCS 5/2-622(a)(1) (medical reports must explain why cause of action has merit); *see Bergman v. Kelsey*, 375 Ill. App. 3d 612, 625, 873 N.E.2d 486, 500 (1st Dist. 2007) (proof of causation is a necessary element of medical malpractice claims). To the extent that this inadequacy in Dr. Cohn's report might be problematic, Maldonado has now filled the gap. An additional report provided by Dr. Flaherty and attached to the Third Amended Complaint explains:

> The antibiotic treatment with nafcillin should not have been stopped and should have been continued for at least 6-8 weeks. . . . Had this been done . . . [Maldonado's] ultimate paralysis could have been avoided.

---

[6] Maldonado later supplemented Dr. Cohn's report with a report from Dr. Flaherty, which identifies, in "practical terms," additional treatment deficiencies. According to Dr. Flaherty, "an MRI scan should have been performed to confirm the diagnosis." (Flaherty Rep.)

8

(Flaherty Rep.)  Keeping in mind the guidance of Illinois courts that section 2-622 "should not be mechanically applied to deprive the plaintiff of her substantive rights," *Comfort*, 229 Ill. App. 3d at 832, 594 N.E.2d at 384, but rather is designed to prevent the filing of frivolous lawsuits, *Avakian* 328 Ill. App. 3d at 159, 766 N.E.2d at 294, the court finds that the two reports, when read together, adequately explain what Maldonado's doctors failed to do, and what they should have done. Therefore, the Defendants' motion to dismiss on this basis is denied.

## II.  Motion to Strike Allegations As Unsupported by the Medical Reports

In the alternative, SHS and the Hospital have moved to dismiss claims of negligence against SHS; against Doctors Glick and Ekechukwu; against unnamed nurses and technicians; and against unnamed interns and residents.[7] (Mot. to Dismiss ¶¶ 15, 16-18, 21-22, 23-24.)  The court addresses these arguments below.

### A.  Allegations of Negligence by Dr. Glick and Dr. Ekechukwu

SHS and the Hospital contend, first, that any allegations of negligence by Dr. Glick and Dr. Ekechukwu should be stricken because Dr. Cohn has failed to attest to his familiarity with the standard of care in these doctors' specialties.  (Mot. to Dismiss ¶ 22.)  Under Illinois law, Dr. Cohn does not need to practice in the same specialty as Dr. Glick and Dr. Ekechukwu in order to offer a valid medical report; the requirement that he must "practice[] . . . in the same area of health or medicine" requires only that he, like the defendants, must be a licensed physician.  *Hagood*, 165

---

[7]  These challenges to Maldonado's negligence claims are styled as motions to strike these allegations. (Mot. to Dismiss at 2.) As SHS and the Hospital are arguing that the claims are procedurally barred (rather than suggesting that they are, for example, scandalous or immaterial within the meaning of Federal Rule of Civil Procedure 12(f)), the court treats these motions as motions to dismiss.  *See* Charles Alan Wright & Arthur R. Miller, 5C *Fed. Prac. & Proc.* § 1380 (3d ed. 2004) (stating that "prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss the complaint"); *see id.* § 1380 n.7 (collecting numerous cases in which motions to strike were treated as motions to dismiss).

Ill. App. 3d at 372-73, 519 N.E.2d at 69. Dr. Cohn, a member of the faculty of Northwestern University's Feinberg School of Medicine, is board-certified in internal medicine.

While SHS and the Hospital acknowledge that Dr. Cohn need not practice in the same specialty as Dr. Glick or Dr. Ekechukwu, they still contend that Dr. Cohn needs to attest to his familiarity with the standards of care related to the treating physicians' specialties. (Reply at 9.) The court concludes that Dr. Cohn's report establishes that he does have this familiarity. His report includes the following discussion:

> I am knowledgeable in the issues of medical care that were practiced in this matter. I am familiar with the standard of care for doctors in this area. I am familiar with what the standard of care requires for physicians treating patients with osteomyelitis, infection, and findings of osteomyelitis on CT scan.

(Cohn Rep.) Dr. Cohn has adequately attested to his qualifications in this area and to his ability to render an opinion about the relevant standard of care of the treating physicians.

### B.     Allegations of Negligence by Nurses and Technicians

Notably absent from Dr. Cohn's report, on the other hand, is any reference to conduct by nurses or technicians, or any statement that Dr. Cohn is familiar with the standard of care applicable to those fields. (Mot. to Dismiss ¶ 15.) Absent such information, the medical report can not possibly "clearly identify[]" the reasons for Dr. Cohn's determination that a "reasonable and meritorious" cause for filing the action exists against these nurses and technicians. 735 ILCS 5/2-622(a)(1). Furthermore, as Dr. Flaherty's report does not refer to nurses or technicians at any point, it is likewise deficient in this respect.

Maldonado argues that under Illinois law a physician can—and in fact must—write the medical report when the plaintiff alleges that nurses or technicians acted negligently in providing treatment. (Resp. at 5-6.) He also contends that physicians can be familiar with the standard of care applicable to nurses and technicians. (*Id.*) Both of these arguments are irrelevant; the problem is not that it was a doctor, rather than a nurse, who discussed the quality of nursing, but

10

that the two medical reports make no mention of the conduct of nurses or technicians at all. (Cohn Rep.; Flaherty Rep.) Thus, because the allegations concerning nurse or technician malpractice are unsupported by a medical report as required by section 2-622, Maldonado's claims against nurses or technicians are dismissed without prejudice.

### C. Allegations of Institutional Negligence

SHS and the Hospital move to strike Maldonado's allegations that they behaved negligently as institutions, arguing that Dr. Cohn's report is insufficient to support such claims. (Mot. to Dismiss ¶¶ 16-18.) The requirements of a section 2-622 report apply to allegations of institutional negligence. *See Kus v. Sherman Hosp.*, 204 Ill. App. 3d 66, 72, 561 N.E.2d 381, 384 (2d Dist. 1990). Defendants claim that Dr. Cohn's medical report fails to meet this requirement because it does not describe any institutional negligence committed by SHS or Mt. Sinai Hospital. (Mot. to Dismiss ¶ 18.)

In order to sustain a claim of healing art malpractice, a medical report must both conclude that there exists a reasonable and meritorious basis for such a claim and explain the reasons for that determination. 735 ILCS 5/2-622(a)(1)*; Premo v. Falcone*, 197 Ill. App. 3d 625, 631, 554 N.E.2d 1071, 1076 (2d Dist. 1990). The report must discuss the involvement of every defendant (including any institutional defendant) that is claimed to have acted negligently. *Jacobs v. Rush N. Shore Med. Ctr.*, 284 Ill. App. 3d 995, 1000, 673 N.E.2d 364, 367 (1st Dist. 1996). Furthermore, the discussion "must be more than a 'generalized conclusion' of malpractice." *Id.* (quoting *Moss v. Gibbons*, 180 Ill. App. 3d 632, 638, 536 N.E.2d 125, 128 (4th Dist. 1989)).

The court finds both Dr. Cohn's and Dr. Flaherty's medical reports wholly deficient in regards to claims of institutional negligence, because they lack any substantive reasoning for concluding that a meritorious case exists against Mt. Sinai Hospital or SHS. The Flaherty report does not discuss either institutional defendant, so it obviously falls short of the mark. Likewise, Dr. Cohn does not ever mention SHS by name in his report or detail its involvement in Maldonado's

treatment; therefore, his report can not possibly be sufficient in regards to SHS.  Finally, while Dr. Cohn does mention in his report that Maldonado was hospitalized at Mt. Sinai Hospital, and asserts that Maldonado has a reasonable and meritorious basis for suing the hospital, the report is completely devoid of references to any way in which the hospital acted negligently in performing its administrative or managerial functions.  Thus, Cohn's conclusion that there is a meritorious basis for suing the hospital is a "generalized conclusion" of malpractice, which is inadequate under Illinois law.  *Jacobs*, 284 Ill. App. 3d at 1000, 673 N.E.2d at 367.

Maldonado claims that the court in *Requena v. Franciscan Sisters Health Care Corp.*, 212 Ill. App. 3d 328, 570 N.E.2d 1214 (3d Dist. 1991), held that under section 2-622 a medical report need only state there is a reasonable cause to file a lawsuit against the hospital.  (Resp. at 8.)  The court does not believe that *Requena* established such a rule.  The court in *Requena* did not specify the nature of the claims made against the hospital, leaving open the possibility that the plaintiff's claims against the hospital were based only on theories of vicarious liability.  *See* 212 Ill. App. 3d at 329, 333, 570 N.E.2d at 1215, 1217.  Additionally, the court did not quote from, or provide a description of, the medical report; therefore, it is unclear how extensively the consulting physician discussed the hospital's allegedly negligent conduct.  *See id.*  The court believes that interpreting *Requena* to only require the consulting physician to enumerate each institutional defendant with specificity is inconsistent with the Illinois caselaw relating to the sufficiency of medical reports under section 2-622.  *See Jacobs*, 284 Ill. App. 3d at 1000, 673 N.E.2d at 367 (requiring medical reports to go beyond "generalized conclusions" of malpractice).  Therefore, the court grants this part of the motion, and dismisses the allegations of institutional negligence against SHS and the Hospital without prejudice to an amended filing.

### D.     Allegations of Negligence by Unnamed Residents and Interns

Finally, Defendants move to strike Maldonado's allegations against unidentified residents and interns, arguing that the allegations in the medical report are both vague and conclusory and

12

are therefore insufficient under section 2-622. (Mot. to Dismiss ¶ 24.) Defendants contend that Dr. Cohn has failed to identify the names of any of the residents and interns that cared for Maldonado. (*Id.*) Therefore, Defendants conclude that Dr. Cohn's report does not adequately describe the involvement and responsibility of these unidentified residents and interns. (*Id.*)

In a section 2-622 report, the precise identity of the treating physician is unimportant, because the consulting physician reviews conduct, not identity. *Avakian*, 328 Ill. App. 3d at 160, 766 N.E.2d at 295. A medical report must nevertheless clearly identify each treating physician's conduct when multiple physicians are named as defendants. See *Mueller v. N. Suburban Clinic, Ltd.*, 299 Ill. App. 3d at 577, 701 N.E.2d at 253. The court believes that this principle should extend as well to cases in which an institution is alleged to be vicariously liable for the conduct of unnamed persons in its employ. Given that Dr. Cohn has not been able to identify and describe the conduct and involvement of a single resident or intern, the court concludes that Maldonado's medical report fails to satisfy the requirements of section 2-622. At this stage in the pleadings, Maldonado should have been able to name the relevant residents and interns, or at the very least been able to identify them by their dates of involvement or entries in Maldonado's medical records. Without this identifying information, the court is entirely unable to assess the responsibility and involvement of the unnamed doctors.

## **CONCLUSION**

For the reasons stated above, the Hospital's [48] and SHS's [46] motions to dismiss are granted, without prejudice, as to claims alleging negligence by unnamed nurses or technicians, claims alleging institutional negligence by the Hospital and SHS, and claims alleging negligence by unnamed residents or interns. Their motions to dismiss are otherwise denied. If Maldonado

wishes to file an amended pleading in order to correct these defects, he must do so within fourteen days.

ENTER:

Dated: January 16, 2008

_____
REBECCA R. PALLMEYER
United States District Judge